UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL MOGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21 C 1846 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| CITY OF CHICAGO, a municipal | ) | |
| corporation, and ROSCOE VILLAGE LOFTS | ) | |
| CONDOMINIUM ASSOCIATION, a | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Michael Mogan brings this lawsuit because he wishes to list his condominium

unit, 1800 West Roscoe Street Unit #307 in Chicago, Illinois (the "Unit"), for rent on "home

sharing" websites like Airbnb. Mogan brings eleven claims against the City of Chicago (the

"City") and one claim against the homeowners' association of the Unit, Roscoe Village Lofts

Condominium Association (the "Roscoe HOA"). He first seeks a declaratory judgment against

the City and the Roscoe HOA regarding his ability to lease and license the Unit on home sharing

websites (Count I). He then brings ten claims against the City, challenging the constitutionality

of the City's Shared Housing Ordinance (the "Ordinance"), which regulates the home sharing

industry. Mogan alleges that the Ordinance: constitutes an unconstitutional taking in violation of

the Fifth Amendment of the U.S. Constitution (Count II) and an inverse condemnation under

Illinois law (Count III); violates his rights to substantive due process (Count IV) and equal

protection (Count X); violates his First Amendment rights to free speech (Counts V through VII)

and assembly (Count XI); and constitutes an excessive fine under the Eighth Amendment (Count

VIII) and an unconstitutional license for revenue under the Illinois constitution (Count IX). The Defendants now move to dismiss Mogan's complaint.

Because Mogan seeks leave to amend his unconstitutional license for revenue claim in response to the City's motion, the Court dismisses it without prejudice. Mogan premises his Eighth Amendment excessive fines claim on uncertain and contingent events and as a result, the Court dismisses it without prejudice as unripe. Because Mogan fails to sufficiently allege all three factors to support a regulatory takings claim, the Court dismisses his takings and inverse condemnation claims without prejudice. The Court finds that the Ordinance does not implicate the First Amendment because it regulates business activity, not expressive speech or conduct, and therefore, the Court dismisses Mogan's First Amendment claims with prejudice. Mogan has pleaded himself out of court by alleging potential rational bases for the Ordinance's differential treatment between home sharing and hotels/bed-and-breakfasts and thus, the Court dismisses his equal protection claim with prejudice. Because Mogan fails to sufficiently allege that the Ordinance infringes on a fundamental liberty interest or that it is arbitrary and unreasonable, the Court also dismisses his substantive due process claim with prejudice. No claims against the City remain and therefore, no controversy exists between Mogan and the City. Thus, the Court dismisses Mogan's request for a declaratory judgment against the City without prejudice. Finally, the Court declines to exercise supplemental jurisdiction over his declaratory judgment request against the Roscoe HOA and dismisses it without prejudice.

## BACKGROUND[1]

Home sharing, when homeowners allow guests to stay in their home, often for a fee, is a long-standing American tradition that has recently increased in popularity due to home sharing websites like Airbnb. Airbnb acts as an intermediary between hosts and guests by facilitating the rental transaction through its website. Hosts create listings that contain information about their homes, including the suggested price per night, and about themselves. Airbnb displays these listings on its website for potential guests to browse. After guests choose a listing, they request to rent the home and can make offers at or below the suggested rental price. Once the host and guest agree on a price and rental period, Airbnb confirms the booking. To effectuate the transaction, the guests pay Airbnb and Airbnb pays the host. Hosts can rent their homes on Airbnb on a short-term or long-term basis.

## I.     The Ordinance

In response to the increased popularity of home sharing websites, the Chicago City Council passed the Ordinance in June 2016 to regulate the home sharing industry. The Ordinance took effect on or about December 19, 2016, and enforcement against non-compliant hosts began on March 15, 2017. The Ordinance regulates both "vacation rentals" and "shared housing units." It defines "vacation rentals" as "a dwelling unit that contains 6 or fewer sleeping rooms that are available for rent," excluding bed-and-breakfasts, hotels, "a dwelling unit for which a tenant has a month-to-month rental agreement and the rental payments are paid on a monthly basis," corporate housing, guest suites, and shared housing units. Municipal Code of

---

[1] The Court takes the facts in the background section from Mogan's first amended complaint ("FAC") and the exhibits attached thereto and presumes them to be true for the purpose of resolving Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011) (Rule 12(b)(6)); *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (Rule 12(b)(1)). The Court "may also take judicial notice of matters of public record." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019).

Chicago ("MCC") § 4-6-300(a). The Ordinance defines "shared housing unit" as "a dwelling unit containing 6 or fewer sleeping rooms that is rented, or any portion therein is rented, for transient occupancy by guests," excluding "(1) single-room occupancy buildings; (2) hotels; (3) corporate housing; (4) bed-and-breakfast establishments, (5) guest suites; and (6) vacation rentals." MCC § 4-14-010.

The Ordinance regulates both hosts and home sharing intermediaries like Airbnb. It defines a "short term residential rental intermediary" as "any person who, for compensation or a fee: (1) uses a platform to connect guests with a short term residential rental provider for the purpose of renting a short term residential rental, and (2) primarily lists shared housing units on its platform." MCC § 4-13-100. The Ordinance requires hosts to obtain a license from the City prior to renting and operating vacation rentals, MCC § 4-6-300(h)(2), (i), and requires intermediaries to register the shared housing units listed on their platform with the City prior to renting them, MCC §§ 4-13-230(a), 4-14-020(a). Intermediaries also must obtain a license from the City to operate, MCC § 4-13-200, annually renew the license, MCC § 4-13-205, and pay a fee annually, the amount of which depends on the number of rentals listed on the platform, MCC § 4-5-010(36).

The Ordinance allows a homeowners' association to notify the City that "no licensed vacation rentals or shared housing units are permitted to operate anywhere in such building." MCC § 4-13-260(a)(9). The City then deems units within these buildings as "ineligible for listing by a provider on a licensee's platform," MCC § 4-13-260(a)(9), and the units cannot receive licenses to operate as vacation rentals, MCC § 4-6-300(c)(7), be rented as vacation rentals, MCC § 4-6-300(h)(4), register as shared housing units, MCC § 4-14-030(a), or be rented as shared housing units, MCC § 4-14-050(i). The City must maintain a public prohibited

buildings list that identifies "the address(es) of all buildings whose owner(s), including any applicable homeowners' association or board of directors, have notified the commissioner, pursuant to Section 4-13-260(a)(9), that no vacation rentals or shared housing units, in any combination, are permitted to operate anywhere in such building."[2]  MCC § 4-13-270(c).

Once the City adds a building to the prohibited buildings list, it must notify, in writing, shared housing unit and vacation rental hosts within the building and intermediaries of the unit's ineligibility.  MCC §§ 4-13-260(b), 4-14-030(b).  The parties may then request a hearing before the commissioner to contest the unit's ineligibility, and, after such hearing, the parties can appeal the final determination.  MCC §§ 4-13-260(b), 4-14-030(b).  If a host rents a unit that is on the prohibited buildings list twenty-eight days after the City sent final notice of the unit's ineligibility, the host is subject to a $5,000 fine per day that the violation continues.  MCC §§ 4-6-300(h)(4), 4-14-050(i).  If a host fails to remove an ineligible listing from a platform fifteen days after receiving the final ineligibility determination from the City, the host is subject to a $2,500 to $5,000 fine per day that the violation continues.  MCC §§ 4-6-300(h)(11), 4-14-060(g).

On September 9, 2020, the Chicago City Council passed several amendments to the Ordinance that added the following provisions: vacation rentals and shared housing units are now subject to a minimum rental period of ten consecutive hours, MCC §§ 4-6-300(g)(l), 4-14-050(e), which effectively bans single-night rentals, and the maximum occupancy of vacation rentals and shared housing units is now "one person per 125 feet of floor area" of the unit, MCC §§ 4-6-300(g)(5), 4-14-050(b).  A host who violates either of these provisions is subject to a $1,500 to $3,000 fine per day that the violation continues.  MCC §§ 4-6-300(k)(1), 4-14-090(a).  The City "employs code-enforcement officers who are tasked with actively identifying and

_____

[2] The prohibited buildings list is available at: https://data.cityofchicago.org/Buildings/House-Share-Prohibited-Buildings-List/7bzs-jsyj/data (last visited January 11, 2022).

punishing property owners who [unlawfully] rent their homes on a short-term basis."  Doc. 8 ¶ 219.  In the second half of 2018 alone, the City collected over $100,000 in penalties based on violations of the Ordinance.

## II.    The Unit

Mogan bought the Unit in September 2004 and began leasing it to various tenants in 2009.  He "expended thousands of dollars to furnish [the Unit] . . . to generate licensing and leasing revenue," *id.* ¶ 103, and his livelihood "depends in some way" on the home sharing industry, *id.* ¶ 198.  Mogan "has in the past or plans to in the future" list the Unit on home sharing websites to license the Unit to guests "on a nightly, weekly, monthly or annual basis," *id.* ¶ 104, and lease the Unit on a monthly and annual basis, *id.* ¶¶ 105–06.  Before the City amended the Ordinance in 2020, Mogan made the Unit available for lease or license to more than one person per 125 square feet of floor area of the Unit and "plans to [do so] in the future."  *Id.* ¶¶ 107, 266.  Mogan also "made [the Unit] available for single-night rentals" before the City amended the Ordinance in 2020, and he would do so again if the Ordinance did not prohibit it. *Id.* ¶ 255.  Additionally, Mogan "has in the past or plans to in the future act as a Short Term Residential Rental Intermediary."  *Id.* ¶ 136.

Property Solutions Chicago Inc. manages the building that houses the Unit, the Roscoe Village Lofts ("Roscoe").  Pamela Chianelli is the secretary and shareholder of Property Solutions Chicago Inc.  According to the Roscoe HOA's Declarations (the "Declarations"), the Roscoe HOA exercises its authority through its board of directors.  The Declarations state that "no Unit shall be leased, subleased or assigned for transient or hotel purposes, which are hereby defined as being for a period of less than thirty (30) days where hotel services normally furnished by a hotel (such as room service and maid service) are furnished."  *Id.* ¶ 24.  Mogan "has not in

the past nor intends to in the future offer licensees, lessees, sublessees or assignees" of the Unit services normally furnished by a hotel. *Id.* ¶ 35. In August 2016, the Roscoe HOA board of directors and Chianelli sought inclusion of Roscoe on the City's prohibited buildings list and the City added the building to the list that same month. The Roscoe HOA did not hold a vote of its members prior to placing the building on the prohibited buildings list. Chianelli has accused Mogan of placing the Unit on Airbnb in violation of the Declarations and has threatened him with the possibility of the City fining him or the Roscoe HOA board taking adverse action against him for listing the Unit on Airbnb. At no time prior to Chianelli's threats did she or a Roscoe HOA board member inform Mogan that Roscoe was on the prohibited buildings list. Instead, "Chianelli and the 2016 [Roscoe] Board waited until after the Shared Housing Ordinance took effect to notify [Mogan] that the Roscoe Village Lofts at 1800 W. Roscoe St. had been added to the City of Chicago's Prohibited Building List." *Id.* ¶ 97.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). If, as here, a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Id.* "[W]hen evaluating a facial challenge to subject matter jurisdiction," the Court employs the *Twombly–Iqbal* "plausibility" standard, "which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.       Valid Case or Controversy

Defendants first argue that Mogan fails to allege a valid case or controversy as required by Article III of the Constitution and therefore, the Court must dismiss the FAC for lack of subject matter jurisdiction. *See White v. Ill. State Police*, 15 F.4th 801, 807 (7th Cir. 2021) ("Article III limits the jurisdiction of federal courts to 'Cases' or 'Controversies.'" (citation omitted)). Defendants both argue that Mogan does not have standing and the City also argues that Mogan's Eighth Amendment claim is unripe. The Court will address each Defendant's arguments in turn.

### A.       Standing

To satisfy the case or controversy requirement, Mogan "must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, --- U.S. ----, 141 S. Ct. 2190,

8

2203 (2021) (citation omitted).  To establish standing, Mogan "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Wadsworth v. Kross, Liberman & Stone, Inc.*, 12 F.4th 665, 667 (7th Cir. 2021) (citation omitted).  "At the pleading stage, the standing inquiry asks whether the complaint 'clearly . . . allege[s] facts demonstrating each element' in the doctrinal test." *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (citation omitted).

### 1. The City

#### a. Injury in Fact

The City argues that Mogan fails to allege a sufficient injury in every claim except for his takings and inverse condemnation claims because the City has not enforced the Ordinance against him.  However, "[i]t is well-established that 'pre-enforcement challenges . . . are within Article III.'" *Ezell v. City of Chi.*, 651 F.3d 684, 695 (7th Cir. 2011) (alteration in original) (citation omitted).  To fulfill the injury in fact requirement in a pre-enforcement challenge, the plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).  The City argues that no actual or imminent threat of prosecution exists, while Mogan argues that he has sufficiently alleged a credible threat of prosecution.  "[T]he potential for prosecution must be likely; if a prosecution is unlikely or not even 'remotely possible,' then the dispute is not 'susceptible to resolution by a federal court.'" *E.F. Transit, Inc. v. Cook*, 878 F.3d 606, 610 (7th Cir. 2018) (citation omitted).  Thus, the risk of threatened enforcement must be substantial, not "conjectural or hypothetical." *Susan B. Anthony List*, 573 U.S. at 158 (citation omitted).

9

Mogan alleges that the City "employs code-enforcement officers who are tasked with actively identifying and punishing property owners" who violate the Ordinance and that in six months alone, the City collected over $100,000 in fines for violations of the Ordinance. Doc. 8 ¶ 219. The City has specifically prohibited Mogan from listing the Unit on home sharing websites by placing Roscoe on the prohibited buildings list. Therefore, it is likely that the City would enforce the Ordinance against Mogan if he listed the Unit for rent on a home sharing website, particularly given that it has enforced the Ordinance against other violators in the past. *See Dixon v. Raoul*, No. 18-cv-08369, 2020 WL 2836766, at *3 (N.D. Ill. May 31, 2020) (finding plaintiff sufficiently alleged a credible threat of prosecution in part because "State's Attorneys Offices in Illinois do prosecute a large number of child pornography offenses every year"); *CBS Outdoor, Inc. v. Vill. of Plainfield*, 38 F. Supp. 3d 896, 904 (N.D. Ill. 2014) (finding plaintiff sufficiently alleged plausible threat of enforcement by alleging ordinance specifically prohibited it from undertaking the allegedly constitutionally-protected conduct). Therefore, Mogan has sufficiently alleged a substantial threat of prosecution sufficient to meet the injury in fact requirement.

The City also argues that Mogan's single assertion that he "has in the past or plans to in the future act as a Short Term Residential Rental Intermediary for compensation" is too abstract to clearly allege he has standing to bring an unconstitutional license for revenue claim related to the operational fees for short term residential intermediaries. In response, Mogan seeks leave to amend the claim because he "recently applied to the City seeking approval as an intermediary license[e] under the new requirements and has to still submit most of the required documents required with the application." Doc. 29 at 14. Therefore, the Court will dismiss Mogan's unconstitutional license for revenue claim without prejudice. However, the Court encourages

Mogan to carefully consider each of the City's arguments for dismissal of the claim and the Court's opinion in its entirety, particularly regarding the ripeness of his Eighth Amendment claim, and to address any potential pleading deficiencies if he chooses to assert the unconstitutional license claim in a second amended complaint.

### b.  Fairly Traceable to the City

To sufficiently plead an injury that is fairly traceable to the alleged conduct of the City, Mogan "must allege facts showing a 'causal connection between the injury and the conduct complained of.'" *J.B. v. Woodard*, 997 F.3d 714, 720 (7th Cir. 2021) (citation omitted). The City argues that the Roscoe HOA's independent decision to add the building to the prohibited buildings list is "the underlying causal reason for" Mogan's inability to rent the Unit on home sharing websites, not any alleged action by the City. Doc. 28 at 10. Mogan responds by arguing that a sufficient causal connection exists because the FAC alleges that the City placed Roscoe on the prohibited buildings list. The Court agrees. The Ordinance creates the prohibited buildings list, provides the process by which a homeowners' association may add a building to the list, and dictates the consequences of being on the list. Moreover, Mogan alleges that but for the Ordinance, he would rent the Unit on home sharing websites. *See, e.g.*, Doc. 8 ¶ 73 ("But for the City of Chicago's prohibition on short-term rentals and extremely high fines, Plaintiff would conduct short-term rentals at unit #307."); *id.* ¶ 255 ("[Mogan] wishes to make Unit #307 available for single-night rentals again, and he would do so if the 2020 Amendments did not prohibit it.").

The City points to *Keep Chicago Livable v. City of Chicago*, 913 F.3d 618 (7th Cir. 2019), for support. However, unlike the plaintiffs in that case, Mogan has sufficiently pleaded that "the Ordinance (and not some other factor) is preventing or hampering" his home sharing abilities in Chicago. *Compare id.* at 623 (finding plaintiffs who affirmatively alleged they no longer used

11

Airbnb in Chicago lacked standing to challenge the Ordinance), *with* Doc. 8 ¶ 104 (alleging Mogan "has in the past or plans to in the future" list the Unit on home sharing websites); *id.* ¶ 255 ("[Mogan] wishes to make Unit #307 available for single-night rentals again, and he would do so if the 2020 Amendments did not prohibit it."). Accordingly, Mogan's alleged injuries are "fairly traceable" to the Ordinance and therefore to the City. *See Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803 (7th Cir. 2016) (finding constitutional claims against ordinances were fairly traceable to the city where plaintiff alleged that "but for the ordinances, it would have engaged in protected speech").

### c. Redressable by a Favorable Decision against the City

The City argues that a favorable decision by the Court against it would not redress Mogan's claims because even if the Court invalidated the Ordinance, the Declarations and the Roscoe HOA's decision to prohibit short term rentals in the building would still prohibit Mogan from renting his Unit on home sharing websites. Mogan responds by arguing that the Declarations allow him to rent the Unit on a short-term basis and it is instead the City's actions that prohibit him from doing so. "To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, --- U.S. ----, 141 S. Ct. 2104, 2115 (2021) (citation omitted).

Mogan requests various declaratory, injunctive, and compensatory relief as a result of his inability to rent the Unit on home sharing websites, including declaratory judgments deeming the Ordinance unconstitutional and prohibiting its enforcement. According to the FAC, the Declarations prohibit leasing the Unit "for a period of less than thirty (30) days where hotel services normally furnished by a hotel (such as room service and maid service) are furnished." Doc. 8 ¶ 24. However, Mogan alleges that he does not intend to offer services normally

12

furnished by a hotel in the Unit. Therefore, based on the allegations in the FAC, the Declarations do not prohibit Mogan from renting the Unit on home sharing websites. To the contrary, the FAC alleges that the Ordinance (through Roscoe's presence on the prohibited buildings list) prohibits him from doing so and thus, invalidating the Ordinance (which includes the prohibited buildings list) and prohibiting its enforcement would redress Mogan's alleged injuries. *See, e.g.*, *OpenPittsburgh.Org v. Voye*, No. 16-cv-01075, 2021 WL 4429638, at *12 (W.D. Penn. Sept. 27, 2021) (finding complaint sufficiently alleged redressability because plaintiffs alleged that statutes infringed on their rights and the requested injunctive and declaratory relief prohibiting enforcement of the statutes would redress that injury). Because the Ordinance caused Mogan's injuries and the requested relief against the City would compensate those injuries, a favorable decision by the Court against the City would redress Mogan's claims.

### 2.     The Roscoe HOA

The Roscoe HOA argues that Mogan fails to satisfy the case or controversy requirement in his request for a declaratory judgment against it because his alleged injury is conjectural or hypothetical. Mogan seeks a declaratory judgment that he is "entitled to" and that the Roscoe HOA has a "duty to allow" him to rent the Unit on home sharing websites. Doc. 8 ¶ 146. To establish injury in fact, Mogan must allege that he "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Prosser v. Becerra*, 2 F.4th 708, 713 (7th Cir. 2021) (citation omitted). Specifically, the Roscoe HOA argues that because Mogan does not sufficiently allege that it has denied him the ability to rent the Unit or that Roscoe's inclusion on the prohibited buildings list has precluded him from renting the Unit, his injuries are conjectural or hypothetical. In response, Mogan argues that the FAC alleges he has in the past or plans to in the future rent the

Unit on home sharing websites and because of Roscoe's presence on the prohibited buildings list, he is in immediate danger of sustaining a direct injury if he does so. Moreover, Mogan argues that Chianelli has threatened him in the past with fines from the City and adverse action from the Roscoe HOA board, so the harm is not hypothetical. The Court agrees.

Mogan alleges that he "has in the past or plans to in the future" rent the Unit on home sharing websites, Doc. 8 ¶¶ 104–06, that the Roscoe HOA sought inclusion of Roscoe on the prohibited buildings list, and that Chianelli has threatened him with adverse action from the Roscoe HOA board for listing the Unit on Airbnb. Therefore, suffering consequences from listing the Unit on home sharing websites is not merely conjectural or hypothetical. Mogan has sufficiently alleged a concrete, actual, and imminent injury. *See Cassell v. Snyders*, 458 F. Supp. 3d 981, 992 (N.D. Ill. 2020) (finding plaintiffs had sufficiently alleged an injury in fact where they alleged that the county public health department had threatened them with a closure order if they did not follow the governor's executive order). The Court thus denies the Roscoe HOA's motion to dismiss.[3]

### B. Ripeness

The City also argues that Mogan's Eighth Amendment excessive fines claim is unripe because Mogan fails to allege that the City has imposed a fine or that a fine is immediately impending and therefore, judicial review is not possible. In response, Mogan asserts that the claim is ripe because "the City has taken a positive step to punish Plaintiff by placing Unit #307

---

[3] The Roscoe HOA also argues that the FAC does not comply with Federal Rule of Civil Procedure 8(a)(2)'s requirement to "contain a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), because "the FAC is replete with many allegations that relate, in no manner, to the declaratory judgment being sought by Plaintiff," Doc. 24-1 at 2. However, the FAC contains many allegations unrelated to the declaratory judgment Mogan seeks because it brings multiple related constitutional claims against the City. Therefore, the Court declines to dismiss the FAC under Rule 8(a)(2). *See Harper v. Cent. Wire, Inc.*, No. 19 C 50287, 2020 WL 11422783, at *3 (N.D. Ill. Sept. 17, 2020) ("While the complaint is unduly long and contains numerous unnecessary allegations, it does state a claim and the case should proceed on the merits.").

on the prohibited buildings list." Doc. 29 at 38. For a claim to be ripe, it cannot be "premised on uncertain or contingent events." *Church of Our Lord & Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 676 (7th Cir. 2019); *see Lehn v. Holmes*, 364 F.3d 862, 867 (7th Cir. 2004) ("Ripeness doctrine is based on the 'central perception . . . that courts should not render decisions absent a genuine need to resolve a real dispute.'" (alteration in original) (citation omitted)). In evaluating a claim for ripeness, courts consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Sweeney v. Raoul*, 990 F.3d 555, 560 (7th Cir. 2021) (citation omitted). "Plain and simple, ripeness is 'peculiarly a question of timing.'" *Id.* (citation omitted).

"[U]nder the Eighth Amendment, a punitive fine 'must bear some relationship to the gravity of the offense it is designed to punish.' Thus, a fine 'violates the Excessive Fines clause if it is grossly disproportional to the gravity of a defendant's offense.'" *United States v. Davis*, 859 F.3d 429, 435 (7th Cir. 2017) (citations omitted). To determine whether the fines imposed by the Ordinance are excessive under the Eighth Amendment, the Court must consider: "(1) the essence of the crime and its relation to other criminal activity; (2) whether the defendant fit into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could have been imposed; and (4) the nature of the harm caused by the defendant's conduct." *United States v. Malewicka*, 664 F.3d 1099, 1104 (7th Cir. 2011).

Though a sufficient credible threat of enforcement exists to confer standing, the fine Mogan faces if the City enforces the Ordinance against him is uncertain. Those who violate the Ordinance are subject to varying fines per day that the violation continues. *See* MCC §§ 4-6-300(h)(4), (11); 4-6-300(k)(1); 4-14-050(i); 4-14-060(g); 4-14-090(a). The Ordinance sets forth different fines for different violations, some of which include a discretionary range. The

Ordinance also allows an offender to contest the violation and gives the offender two weeks to cure the violation before the City begins imposing fines. Therefore, without a fine immediately impending against Mogan, any decision that the Court could make at this time regarding the constitutionality of fines the City could possibly impose on Mogan would be "premised on uncertain or contingent events." *Church of Our Lord*, 913 F.3d at 676. Accordingly, Mogan's excessive fines claim is not fit for judicial resolution at this time. *See United States v. Blackman*, 746 F.3d 137, 144 (4th Cir. 2014) ("Where no final forfeiture order or judgment has been entered, ruling on [an excessive-fines challenge] would be premature."); *United States v. Paul Revere Transp., LLC*, 608 F. Supp. 2d 175, 177 (D. Mass. 2009) ("Without the facts of a particular imposition or fine, the Court cannot decide whether a specific fine will be so excessive as to violate the Eighth Amendment.").

Mogan argues that he would face a substantial hardship if the Court found the claim unripe because that would force him to choose between foregoing lawful activity and risking substantial legal sanctions. However, given that the Ordinance allows an offender to contest and cure violations after receiving notice of them and before it imposes fines, the Court does not find that the risk of legal sanctions under the Ordinance constitutes a substantial hardship. *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 734 (1998) (finding that plaintiff "will have ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain" and therefore withholding consideration of the claim would not constitute significant hardship); *cf. Pittman v. Cole*, 267 F.3d 1269, 1280 (11th Cir. 2001) ("[I]f a party is to suffer an 'immediate and direct impact' from a challenged policy, a case is more likely to be considered ripe." (citation omitted)). Therefore, the Court dismisses Mogan's Eighth Amendment excessive fines claim without prejudice as unripe. *See Cheffer v. Reno*, 55 F.3d

1517, 1524 (11th Cir. 1995) (affirming dismissal of pre-enforcement Eighth Amendment excessive fines claim as unripe because the challenged law provided courts discretion to determine the amount of the fine and therefore the court could "only speculate as to whether the future applications urged by appellants will come to pass").

## II.    Statute of Limitations

The City next argues that the Court should dismiss Mogan's takings, inverse condemnation, substantive due process, and free speech claims as untimely under the relevant statutes of limitations.  In response, Mogan asserts that the City can only invoke the statute of limitations as an affirmative defense under Federal Rule of Civil Procedure 12(c), not through a Rule 12(b)(6) motion to dismiss.  However, courts can dismiss time-barred claims under Rule 12(b)(6) where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint reveals that an action is untimely under the governing statute of limitations."  *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005); *see also Burns v. United States*, 762 F. App'x 338, 339 (7th Cir. 2019) ("Although the statute of limitations is ordinarily an affirmative defense . . . a district court may dismiss under Rule 12(b)(6) something that is indisputably time-barred." (alteration in original) (citation omitted)).

### A.    Takings and Substantive Due Process Claims

#### 1.    Accrual of Claims

The parties agree that Mogan's Fifth Amendment takings claim and Fourteenth Amendment substantive due process claim are both subject to a two-year statute of limitations.[4]

---

[4] The FAC does not mention § 1983 and instead, generally alleges constitutional violations against the City.  However, § 1983 precludes direct claims under the Constitution.  *See Brown v. City of Chi.*, No. 19 C 2411, 2020 WL 489522, at *3 (N.D. Ill. Jan. 30, 2020) ("Section 1983 . . . 'provides a cause of action against municipalities and municipal employees acting in their official capacities, and the availability of this statutory remedy precludes direct claims under the Constitution.'" (citation omitted)).  Further,

17

*See Smith v. City of Chi.*, 3 F.4th 332, 335 (7th Cir. 2021) (explaining that § 1983 claims are governed by the forum state's statute of limitations for personal injury claims which in Illinois is two years).  However, the parties disagree as to whether the FAC reveals that these claims accrued more than two years prior to when Mogan filed this suit on January 25, 2021.  Federal law determines when a § 1983 claim begins to accrue, or in other words, when the limitations period begins.  *Id.*  In determining when a § 1983 claim accrued, the Court must first identify the injury, then it "must determine the date on which the plaintiff could have sued for that injury," which is "the date that the plaintiff knew or should have known that his constitutional rights had been violated."  *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006) (citation omitted).

The injury Mogan alleges is his inability to rent the Unit on home sharing websites in violation of his constitutional rights.  Specifically, Mogan's takings claim alleges that the City, through the Ordinance, effected an unlawful taking of his property by prohibiting him from renting the Unit on home sharing websites, and his substantive due process claim alleges that the City's decision to impinge on his property rights in the Unit by prohibiting him from renting it on home sharing websites was arbitrary and irrational.  These injuries result from Roscoe's presence on the prohibited buildings list, which is, effectively, what prohibits Mogan from renting the Unit on home sharing websites.  The City argues that Mogan's claims challenge the Ordinance itself, not the addition of Roscoe to the prohibited buildings list, and therefore his claims accrued when the City enacted the Ordinance (June 2016) or at the latest when the Ordinance went into effect (December 2016).  The City points to cases in which federal courts

---

Mogan seems to acknowledge in his responsive pleading that he brings his Fifth Amendment takings claim and Fourteenth Amendment substantive due process claim under § 1983.  *See* Doc. 29 at 15–16 (citing in support a § 1983 case alleging a Fifth Amendment taking and acknowledging that "[a] deprivation of constitutional rights is litigated pursuant to 42 U.S.C. § 1983" in connection with his substantive due process claim).  Therefore, the Court will apply the statute of limitations for § 1983 claims to Mogan's Fifth Amendment takings claim and Fourteenth Amendment substantive due process claim.

have found that facial challenges to land-use ordinances accrue when the government enacts the ordinance or the ordinance goes into effect. *See, e.g.*, *Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jiménez*, 659 F.3d 42, 50–51 (1st Cir. 2011) ("[I]t is clear that a facial takings challenge accrues at the time the offending statute or regulation is enacted or becomes effective."); *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1027 (9th Cir. 2007) (holding that facial substantive due process claim against rent-control ordinance accrued on the date the challenged ordinance was enacted).

However, Mogan does not allege a facial takings or substantive due process claim. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494 (1987) (defining facial takings claim as "a claim that the mere enactment of a statute constitutes a taking"); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (defining facial challenges as those that allege "that the law is unconstitutional in all of its applications"). Instead, he alleges that as-applied to him, the Ordinance constitutes a taking and violates his substantive due process rights. *See Keystone*, 480 U.S. at 494 (defining an as-applied takings claim as one that claims "the particular impact of government action on a specific piece of property requires the payment of just compensation"); *Surita v. Hyde*, 665 F.3d 860, 875 (7th Cir. 2011) ("An as-applied challenge is one that charges an act is unconstitutional as applied to a plaintiff's specific activities even though it may be capable of valid application to others."). Although Mogan's takings and substantive due process claims are not precise, the Court interprets these claims as challenging the Ordinance's specific impact on the Unit, not the Ordinance itself. *See, e.g.*, Doc. 8 ¶ 155 ("The Shared Housing Ordinance takes from Plaintiff the ability to license or lease Unit #307 on AIRBNB, HomeAway and other home sharing websites."); *id.* ¶ 169 ("The decision by the City of Chicago to impinge on Plaintiff's use and enjoyment of his property rights in unit

19

#307 was arbitrary and irrationally reached."). Another key indicator is that, in these claims, Mogan seeks compensatory damages, not a declaratory judgment that the Ordinance is unconstitutional. *See Asociación*, 659 F.3d at 48 (noting "[t]he relief sought is also relevant to whether the claim is a facial claim" and finding that a claim seeking declaration that an entire law is unconstitutional was a facial takings claim). Moreover, in his responsive briefing, Mogan asserts that he "does not allege his property was taken instantly when the Ordinance was enacted." Doc. 29 at 16.

Though the claims do not specifically mention the prohibited buildings list, considering the FAC in its entirety, it is clear that Mogan's alleged takings and substantive due process claims result from Roscoe's presence on the list, not the enactment of the Ordinance. The City itself admits that "the only provisions of the Ordinance [Mogan] mentions as preventing him from being able to list his unit on Airbnb are those provisions related to the Prohibited Buildings List." Doc. 28 at 15 n.4. Moreover, when enacted in June 2016, the Ordinance did not prohibit Mogan from listing the Unit on home sharing websites. It was not until August 2016 when the City added Roscoe to the prohibited buildings list that the Ordinance prohibited him from doing so. Therefore, Mogan could have sued for his alleged Fifth and Fourteenth Amendment violations in August 2016. *Cf. Paramount Media Grp., Inc. v. Vill. of Bellwood*, 929 F.3d 914, 920 (7th Cir. 2019) (holding that substantive due process claim regarding plaintiff's inability to build billboard on its property accrued when village enacted the ordinance that effectively prohibited plaintiff from building billboard); *CBS Outdoor, Inc. v. Vill. of Plainfield*, 959 F. Supp. 2d 1054, 1062 (N.D. Ill. 2013) (holding that facial challenge to ordinance that required plaintiff to remove a specific billboard accrued when the village enacted the ordinance).

2.      **Discovery Rule**

However, Mogan argues that because the FAC does not allege when he became aware of the Unit's placement on the prohibited buildings list, the discovery rule prevents the Court from dismissing these claims as time-barred at this stage. The discovery rule is an equitable doctrine that delays the accrual of claims "until such time as [the plaintiff] reasonably could have discovered the defendant's wrongdoing." *United States v. Spectrum Brands, Inc.*, 924 F.3d 337, 350 (7th Cir. 2019). "This is a fact-intensive inquiry, in which both the surrounding circumstances and the claims plaintiff herself is trying to raise are critical." *Hileman v. Maze*, 367 F.3d 694, 697 (7th Cir. 2004). The FAC does not allege the date Mogan learned that Roscoe was on the prohibited buildings list; instead, it merely alleges that after the Ordinance took effect in December 2016, Chianelli and the Roscoe HOA board of directors notified Mogan that Roscoe was on the prohibited buildings list. Doc. 8 ¶ 97.

The City first argues that the relevant accrual date for Mogan's takings and substantive due process claims is when the City enacted the Ordinance, regardless of when Mogan discovered its enactment. *Cf. Action Apartment*, 509 F.3d at 1027 (finding that plaintiff bringing a facial substantive due process claim against rent control ordinance "should have known of its injury on the date of the ordinance's enactment"). However, as previously discussed, the correct accrual date for these claims is when the City added Roscoe to the prohibited buildings list. The City next argues that because the prohibited buildings list is publicly available online, Mogan reasonably could have discovered that Roscoe was on the list when the City added the building to the list in 2016 and therefore, the discovery rule should not delay accrual of his claims.

Although this may be true, "[a]s long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left

21

for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). Details regarding the applicability of the discovery rule are missing from the FAC. The Court is unaware when, how, or why Mogan became aware that Roscoe is on the prohibited buildings list, which would be helpful in assessing when he reasonably could have discovered that fact. Therefore, the Court cannot find that the FAC reveals all the facts necessary to conclude that the statute of limitations bars Mogan's takings and substantive due process claims, making dismissal of the claims as untimely premature at this stage in the litigation. *See, e.g.*, *CBS Outdoor*, 959 F. Supp. 2d at 1063 (finding dismissal of § 1983 claims as time-barred premature where complaint did not allege when plaintiff became aware of the ordinance and instead only alleged that the ordinance was enacted without notice to plaintiff); *Enenstein v. Eagle Ins. Agency, Inc.*, No. 06 C 627, 2006 WL 1594019, at *3 (N.D. Ill. June 7, 2006) (denying motion to dismiss because plaintiff did "not allege specific facts that affirmatively showed when he had notice of Defendants' alleged violations").

### B. Inverse Condemnation Claim

The City argues that Illinois' one-year statute of limitations for claims against public entities bars Mogan's inverse condemnation claim brought under Illinois law. *See* 745 Ill. Comp. Stat. 10/8-101(a) ("No civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued."). Mogan asserts that his inverse condemnation claim is subject to the five-year statute of limitations applicable to actions seeking "to recover the possession of personal property or damages for the detention or conversion

22

thereof." 735 Ill. Comp. Stat. 5/13-205. However, the one-year statute of limitations within 745 Ill. Comp. Stat. 10/8-101 applies to inverse condemnation claims against a local entity like the City. *See Madison v. City of Chi.*, 2017 IL App (1st) 160195, ¶ 29 (affirming dismissal of inverse condemnation claim against the City as time-barred under one-year statute of limitations within 745 Ill. Comp. Stat. 10/8-101); *see also Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) ("While the two-year period still applies to § 1983 claims against [Illinois local governmental entity] defendants, the one-year period applies to state-law claims that are joined with a § 1983 claim." (citations omitted)).

Next, the parties make the same arguments regarding whether the discovery rule prohibits the Court from dismissing the inverse condemnation claim as time-barred at this stage. Under Illinois law, the discovery rule also delays the accrual of claims until "the party seeking relief knows or reasonably should know of an injury and that it was wrongfully caused." *Ericson v. Conagra Foods, Inc.*, No. 20-cv-07065, 2021 WL 4133524, at *3 (N.D. Ill. Sept. 10, 2021) (citing *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 285 (2003)); *see also Super Mix of Wis., Inc. v. Nat. Gas Pipeline Co. of Am., LLC*, 2020 IL App (2d) 190034, ¶ 46 ("[A]ny inverse condemnation claim accrued when the owner of the property knew or reasonably should have known of the injury and that the injury was wrongfully caused."). Mogan's inverse condemnation claim mirrors his Fifth Amendment takings claim. As explained above, because it is unclear from the FAC when Mogan reasonably should have known that the City added Roscoe to the prohibited buildings list, it is too early to make this determination. Therefore, the Court will not dismiss Mogan's inverse condemnation claim as untimely.

### C.    Free Speech Claims

Finally, the City argues that Mogan's free speech claims are also untimely under the applicable two-year statute of limitations for § 1983 claims.  In response, Mogan argues that his free speech claims are facial challenges[5] to the Ordinance and therefore, they are not subject to a statute of limitations defense.  No federal circuit "has resolved the issue of whether the statute of limitations for a § 1983 claim can bar a facial challenge to legislation brought under the First Amendment." *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 441 (E.D.N.Y. 2021) (collecting cases).  However, the courts that have considered the issue have found that "the statute of limitations for section 1983 claims does not apply to facial First Amendment challenges" so long as the ordinance remains in effect.  *Id.* at 442; *see, e.g.*, *Lavey v. City of Two Rivers*, 994 F. Supp. 1019, 1023 (E.D. Wis. 1998) ("[I]t is doubtful that an ordinance facially offensive to the First Amendment can be insulated from challenge by a statutory limitations period." (citation omitted)).  The City does not provide a persuasive reason for the Court to find otherwise.  Therefore, the Court will not dismiss Mogan's facial challenges to the Ordinance on free speech grounds as untimely.  *See Peterson v. Vill. of Downers Grove*, 103 F. Supp. 3d 918, 924 (N.D. Ill. 2015) (finding that statute of limitations did not bar facial challenge to ordinance on First Amendment grounds because the claim alleged an ongoing harm).

### III.    Takings (Count II) and Inverse Condemnation (Count III) Claims

Next, the City argues that the Court should dismiss Mogan's takings and inverse condemnation claims because he fails to sufficiently allege them.  The Fifth Amendment's takings clause (applicable against the states through the Fourteenth Amendment) provides that

---

[5] Although it is somewhat unclear whether Mogan's free speech claims also allege as-applied challenges, because Mogan classifies them as facial challenges, the Court will treat them as such.  *See Six Star Holdings*, 821 F.3d at 803 ("[A] court may construe a challenge as applied or facially, as appropriate.").

private property shall not "be taken for public use, without just compensation."  U.S. Const. amend. V.  Similarly, the Illinois constitution provides that "[p]rivate property shall not be taken *or damaged* for public use without just compensation as provided by law."  Ill. Const. 1970, art. I, § 15 (emphasis added).  "Pursuant to this provision [of the Illinois constitution], when a governmental defendant takes *or damages* private property for public use without a condemnation proceeding, the property owner may sue the defendant, in what is known as an inverse condemnation suit, to recover just compensation for the property that has been taken or damaged."  *Berry v. City of Chi.*, 2020 IL 124999, ¶ 40 (emphasis added).  Since Mogan alleges a taking of his property, not damage to it, the claims follow the same analysis and thus, the Court will consider the claims together as the parties did.  *See Hampton v. Metro. Water Reclamation Dist. of Greater Chi.*, 2016 IL 119861, ¶¶ 13, 16 (holding that where a plaintiff alleges a taking of his property under the Illinois constitution, as opposed to damage to his property, courts may use the same framework as a Fifth Amendment takings claim to analyze the claim).

To state a takings claim, what the plaintiff alleges has been taken for public use must "be considered property for the purposes of the Takings Clause of the Fifth Amendment." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001 (1984).  According to the City, Mogan alleges that the City took his ability to rent the Unit on home sharing websites and that such an ability is not a protected property interest.  However, the City's view is too narrow.  Considering the claims in their entirety, Mogan alleges that the Ordinance restricts the use of his property or prevents him from making a particular use of his property without just compensation, which can constitute a regulatory takings claim.  *See Murr v. Wisconsin*, --- U.S. ----, 137 S. Ct. 1933, 1943 (2017) (noting that "when a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found").  At issue then, is whether

25

Mogan sufficiently alleges that the Ordinance constitutes a regulatory taking.[6]  A regulatory

taking is "a restriction on the use of property that [goes] 'too far.'"  *Horne v. Dep't of Agric.*, 576

U.S. 350, 360 (2015) (quoting *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).  In

determining whether a regulatory taking has occurred, the Court considers "[1] the economic

impact of the regulation, [2] its interference with reasonable investment-backed expectations,

and [3] the character of the government action*.*  *Id.*

       The City first argues that the FAC alleges that the Ordinance causes minimal economic

impact to the Unit because Mogan admittedly retains many economically viable uses of the Unit.

In examining this factor, the Court must "compare the value that has been taken from the

property with the value that remains in the property."  *Murr*, 137 S. Ct. at 1943.  The FAC

alleges that the Ordinance "does not necessarily deprive [Mogan] of all economically viable use

of his unit (which can still be enjoyed as a residence, rented long-term or sold)," but it does take

away his ability to rent the Unit on home sharing websites.  Doc. 8 ¶ 155.  However, the FAC

fails to allege the impact that his inability to rent the Unit on home sharing websites has on the

overall value of the Unit.  The FAC alleges that the Ordinance has "diminished the fair market

value" of the Unit, *id.* ¶ 153, but "mere diminution in the value of property, however serious, is

insufficient to demonstrate a taking."  *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers

Pension Tr. for S. Cal.*, 508 U.S. 602, 645 (1993).  If anything, the FAC alleges that renting the

Unit on home sharing websites provides little value.  *See* Doc. 8 ¶ 37 (alleging Mogan "makes a

little extra income" from home sharing).

---

[6] Mogan asserts that his takings claim is a regulatory takings claim, *see* Doc. 29 at 19, expressly alleges
that the Ordinance does not deprive him of all economically beneficial use of the Unit, Doc. 8 ¶ 155, and
does not allege that the Ordinance imposes a permanent physical invasion of the Unit.  Thus, the Court
need only analyze whether the Ordinance constitutes a regulatory taking.

Thus, based on the allegations in the FAC, the Court finds it implausible that the value remaining in the Unit is substantially less than the value of renting the Unit on home sharing websites. In other words, based on the allegations in the FAC, it is plausible that prohibiting Mogan from renting the Unit on home sharing websites takes away only a small portion of the value of the property, given that he can still rent the Unit through any other avenue, live in the Unit, or sell it. Therefore, Mogan has not sufficiently alleged an economic impact substantial enough to constitute a taking. *See, e.g.*, *Home Builders Ass'n of Greater Chi. v. City of Chi.*, 213 F. Supp. 3d 1019, 1029–30 (N.D. Ill. 2016) (finding plaintiff failed to allege a sufficient economic impact of a regulation where it merely alleged that the regulation "will have *some* impact on the property value"); *Capodilupo v. S. Shore Vocational Tech. High Sch.*, No. 18-CV-11080, 2018 WL 6199573, at *3 (D. Mass. Nov. 28, 2018) ("Because the alleged diminution in value of Mr. Capodilupo's property may not itself constitute a taking, Mr. Capodilupo has failed to allege sufficient facts to plausibly plead a claim for relief.").

The City next argues that Mogan's allegations regarding the Ordinance's interference with his reasonable investment-backed expectations are conclusory. Mogan responds by pointing to five paragraphs in the FAC that he claims sufficiently allege he is incapable of producing a reasonable return on his investment in the Unit. *See* Doc. 8 ¶ 150–52, 163–64. However, these five paragraphs do not plausibly allege that the Ordinance interfered with Mogan's investment expectations for renting the Unit on home sharing websites; instead, they merely allege that Mogan "took specific steps toward the home sharing of his Unit #307," *id.* ¶ 150, and the Ordinance "frustrated" his abilities to do so, *id.* ¶ 151. Elsewhere, the FAC alleges that Mogan "expended thousands of dollars to furnish [the Unit] . . . to generate licensing and leasing revenue and shift (or 'share') some of the burden of the cost of ownership of

27

Plaintiff's Unit #307 to lessees and licensees." *See id.* ¶ 103. However, this allegation is not specific to renting the Unit on home sharing websites and as previously stated, the Ordinance does not interfere with Mogan's ability to lease or license the Unit through other avenues and therefore does not significantly interfere with this investment. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1074 (7th Cir. 2013) (finding that "[w]hile the smoking ban may interfere with some reasonable investment-based expectations, it does not do so to a degree significant enough to find a taking"); *Daugherty Speedway, Inc. v. Freeland*, 520 F. Supp. 3d 1070, 1076–77 (N.D. Ind. 2021) (finding plaintiff failed to sufficiently allege regulatory taking where the complaint failed to allege the profits lost as a result of the regulation and where the complaint plausibly alleged "a minimal interference with distinct investment-backed expectations").

Finally, as to the character of the government action, the City contends that the Ordinance is merely a regulation that "adjust[s] the benefits and burdens of economic life to promote the common good." *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 124 (1978). The Court agrees—the Ordinance does not physically invade property but instead merely regulates the home sharing industry with an intent to promote "the health, safety, morals, or general welfare" of the City's residential neighborhoods. *Id.* at 125. "Such character weighs heavily against finding a taking." *Goodpaster*, 736 F.3d at 1074–75. Mogan argues that given the ad-hoc nature of the claim, the Court should consider his regulatory takings claims at a later stage with more developed facts. However, because Mogan has failed to sufficiently allege any of the three factors required to bring a regulatory takings claim, the Court dismisses his Fifth Amendment takings claim and Illinois inverse condemnation claim without prejudice. *See Daugherty Speedway*, 520 F. Supp. 3d at 1078 (dismissing Fifth Amendment takings claim for failure to

28

state a claim where each factor "overwhelmingly supports Defendants"); *Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1046 (N.D. Ill. 2018) (dismissing Fifth Amendment takings claim for failure to state a claim where the complaint failed to "plead enough information to evaluate" two of the factors).

## IV.    First Amendment Claims (Counts V, VI, VII, XI)

Mogan brings four claims alleging that the Ordinance violates the First Amendment: three free speech claims and one freedom of assembly claim. Count V alleges that the Ordinance is subject to strict scrutiny and is not narrowly tailored to serve any legitimate government purpose; Count VI alleges it restricts speech on the internet without leaving open ample alternative channels of communication; Count VII alleges it is a content-based restriction on speech because it targets online home sharing activities; and Count XI alleges it restricts one's ability to peaceably assemble. The free speech claims seem to focus on the Ordinance's regulation of listings, or advertisements, on home sharing websites, while the freedom of assembly claim focuses on the Ordinance's maximum occupancy provisions. The City argues that the Court should dismiss these claims as a matter of law because the Ordinance regulates business activity and therefore does not implicate the rights of free speech or assembly protected by the First Amendment.

"[R]estrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). "[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Id.*; *see also Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 60 (2006) (finding statute did not violate First Amendment because it affected what law schools "must do . . . not what they may or may not say"). The First

Amendment protects speech and conduct but extends "only to conduct that is inherently expressive." *Rumsfeld*, 547 U.S. at 66; *see also id.* ("If combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it.").

The Ordinance prohibits vacation rentals and shared housing units that are ineligible for registration/licensure with the City, including those on the prohibited buildings list, from advertising on home sharing websites. MCC §§ 4-6-300(h)(1), (4); 4-13-230(a), (g); 4-14-020(a); 4-14-030(a), (c). The maximum occupancy provisions of the Ordinance set the maximum occupancy of vacation rentals and shared housing units to "one person per 125 feet of floor area" of the unit. MCC §§ 4-6-300(g)(5), 4-14-050(b). Mogan alleges that the Ordinance "is intended to regulate home sharing," Doc. 8 ¶ 206, but "has the effect of targeting expressive activity," *id.* ¶ 188, seemingly because advertising on home sharing websites "permits the intimate one-on-one communication" between hosts and guests, *id.* ¶ 192, and allows Mogan "to convey the message that his brand of shared housing is superior to the product offered by the hotel industry," *id.* ¶ 201.[7] However, regardless of whether the Ordinance incidentally burdens expressive conduct, it is "directed at commerce or conduct," *Sorrell*, 564 U.S. at 567, and does not "singl[e] out those engaged in expressive activity," *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986).

The Ordinance regulates the rental and advertisement of homes rented for "transient occupancy by guests," MCC §§ 4-6-300(a); 4-14-010, which is not inherently expressive conduct or speech, *see There to Care, Inc. v. Comm'r of Ind. Dep't of Revenue*, 19 F.3d 1165, 1167 (7th Cir. 1994) ("[T]he business of leasing property is not speech and may be regulated by zoning

---

[7] Mogan fails to make any allegations or arguments as to how renting a vacation rental or shared housing unit to more than "one person per 125 feet of floor area" of the unit could constitute expressive conduct. MCC §§ 4-6-300(g)(5), 4-14-050(b).

laws and the like, even if the lessee wants to put on a play or open a newsstand.").  Indeed, as Mogan alleges, "[t]he whole idea of the [home] sharing economy can be described as collaborative consumption – owners of property rent out something they are not using.  The obvious benefits are that a guest can find a place to stay in Chicago that may otherwise be booked up – or may not have suitable accommodations at all – while the host like Plaintiff makes a little extra income."  Doc. 8 ¶ 37.  Therefore, because the Ordinance is directed at regulating economic activity, it does not implicate the First Amendment.  *See Keep Chicago Livable v. City of Chi.*, No. 16 C 10371, 2017 WL 955421, at *7 (N.D. Ill. Mar. 13, 2017) (finding the Ordinance does not implicate the First Amendment because it "does not target speech but rather the business practices associated with home sharing, only incidentally burdening speech if at all"), *vacated and remanded on other grounds*, 913 F.3d 618 (7th Cir. 2019); *King v. City of Marion*, No. 19-cv-00207, 2020 WL 534173, at *13 (E.D. Ark. Feb. 3, 2020) (finding the conduct prohibited by an ordinance regulating short-term rentals "likely does not have a significant expressive element as to draw First Amendment protection").

Mogan also alleges that by only regulating internet-based home sharing, the Ordinance "falls outside the purview of a pure business regulation because it targets specific speakers like Plaintiff and . . . the idea and message expressed."  Doc. 8 ¶ 197.  However, the Ordinance does not place different restrictions on advertisements depending on the speaker (the host), *see Sorrell*, 564 U.S. at 563–64 (invalidating statute that "disfavor[ed] specific speakers, namely pharmaceutical manufacturers," by restricting the "sale, disclosure, and use of prescriber-identifying information"), or on their content, *see Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015) (invalidating municipal code that imposed different restrictions on outdoor signs based on the message of the signs).  Instead, the Ordinance merely regulates the internet-based home

sharing industry by prohibiting all units deemed ineligible for rental from advertising on home sharing platforms.  In other words, it targets inherently commercial activity (renting a home for a fee) and prohibits the advertising of unlawful activity.  *See HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019) (finding ordinance prohibiting listing of unlicensed short-term housing rentals regulated "nonspeech, nonexpressive conduct" and therefore did not implicate the First Amendment); *Airbnb, Inc. v. City & Cnty. of S.F.*, 217 F. Supp. 3d 1066, 1076 (N.D. Cal. 2016) (finding that home sharing ordinance regulated "business transaction[s] to secure a rental, not conduct with a significant expressive element" and therefore did not implicate First Amendment).  As a result, the Court finds that the Ordinance does not implicate the First Amendment and so dismisses Mogan's First Amendment claims with prejudice.[8]  *See, e.g.*, *Thinh Tran v. Dep't of Plan. for Cnty. of Maui*, No. 19-00654, 2020 WL 3146584, at *8–9 (D. Haw. June 12, 2020) (dismissing homeowner's claim that short-term rental ordinance that imposed restrictions on advertisements violated First Amendment because the ordinance "regulates commercial conduct, not speech" and therefore did not implicate the First Amendment).

## V.      Equal Protection Claim (Count X)

In order to sufficiently state a class of one equal protection claim, Mogan must allege that the Ordinance intentionally treats him differently from a similarly situated individual and that no rational basis exists for the differential treatment.  *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 844–45 (7th Cir. 2014).  The FAC alleges that the Ordinance arbitrarily treats vacation rentals and shared housing units differently than hotels and bed-and-breakfasts by

---

[8] In his response to the Roscoe HOA's motion to dismiss, Mogan seeks leave to amend his First Amendment claims to add the Roscoe HOA as a defendant on the grounds that they are state actors. Because the Court dismisses these claims with prejudice, the Court denies this request.

prohibiting single-night rentals at vacation rentals and shared housing units but not at hotels and bed-and-breakfasts. However, the City argues that Mogan's equal protection claim fails because rational bases exist for the differential treatment. In response, Mogan asserts that the differential treatment is "the result solely of a vindictive campaign by the City," Doc. 29 at 35, and therefore it is "impossible [that it] relates to legitimate governmental objectives," *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995). However, the FAC cannot survive by merely alleging an improper motive. *Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015). At the pleading stage, "[a]ll it takes to defeat [a class-of-one] claim is a *conceivable* rational basis for the difference in treatment," and plaintiffs may "plead themselves out of court if their complaint reveals a potential rational basis for the actions." *Id.* at 1121 (alterations in original) (citation omitted).

That is precisely the case here. The FAC alleges that vacation rentals and shared housing units operate in neighborhoods that hotels do not. *See* Doc. 8 ¶ 121 (home sharing websites provide travelers "the chance to travel to Chicago neighborhoods they might have missed had they stayed in a hotel"); *id.* ¶ 122 (home sharing websites "distribute economic impacts to Chicago neighborhoods that have not traditionally benefitted from tourism spending"); *id.* (home sharing websites allow visitors to "stay[] in and explor[e] new neighborhoods all around Chicago"); *id.* ¶ 124 (home sharing websites "offer visitors a Chicago authentic, local experiences in a home that hotels don't have the power to replicate"); *id.* ¶ 127 (home sharing websites allow travelers "to stay in neighborhoods all across Chicago many neighborhoods which lack hotels"). Therefore, a potential rational basis for imposing a minimum stay on vacation rentals and shared housing units is to protect the City's "legitimate interest in local neighborhood preservation, continuity, and stability." *Nordlinger v. Hahn*, 505 U.S. 1, 12

(1992); *see Murphy v. Walworth Cnty.*, 383 F. Supp. 3d 843, 851 (E.D. Wis. 2019) (finding a short-term rental ordinance that imposed a minimum stay requirement passed rational basis review because "[t]he Ordinance's stated purpose—to protect the health, safety, and general welfare of the public from seasonal over-occupancy—is an obvious and rational justification for the requirements imposed"); *Maum Meditation House of Truth v. Lake Cnty.*, 55 F. Supp. 3d 1081, 1089 (N.D. Ill. 2014) ("[Z]oning ordinances imposing restrictions on use and occupation of private land, including distinguishing between residential and commercial and other uses, satisfy the rational basis test.").

Mogan argues that the City enacted the minimum stay provision of the Ordinance for "improper purposes." Doc. 29 at 37. But even if some animus toward Mogan or home sharing motivated the City in part, his claim still fails because the Ordinance has a rational basis. *See Fares Pawn*, 755 F.3d at 845 ("If we can come up with a rational basis for the challenged action, that will be the end of the matter—animus or no."). Therefore, because the FAC reveals a potential rational basis for the Ordinance's minimum stay provision, the Court dismisses Mogan's equal protection claim with prejudice.[9] *See D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013) (affirming dismissal of class-of-one claim where complaint revealed a rational basis).

## VI. Substantive Due Process Claim (Count IV)

Mogan brings a substantive due process claim alleging that the Ordinance arbitrarily and irrationally impinges on his property rights in the Unit. The City argues that Mogan's substantive due process claim fails because several rational bases support the Ordinance. "[T]he scope of substantive due process is very limited." *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th

---

[9] Because there is no conceivable basis for such a claim given that the Ordinance passes the rational basis test, the Court dismisses Mogan's equal protection claim with prejudice.

34

Cir. 2019) (alteration in original) (citation omitted). To claim that an ordinance that impacts the use of one's land interferes with his substantive rights, Mogan must "demonstrate either that the ordinance infringes a fundamental liberty interest or that the ordinance is arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Greater Chi. Combine & Ctr., Inc. v. City of Chi.*, 431 F. 3d 1065, 1071 (7th Cir. 2005) (citations omitted). "Substantive due process protects only the most egregious and outrageous governmental action." *Campos*, 932 F.3d at 975.

Initially, Mogan fails to allege that the Ordinance infringes on a fundamental right and the Court cannot discern any fundamental right at stake. "'[F]undamental' in this setting is reserved for deeply-rooted, sacrosanct rights such as 'the right of a man and woman to marry, and to bear and raise their children.'" *Greater Chi. Combine*, 431 F.3d at 1071 (citation omitted). Mogan argues that the Ordinance infringes on his "fundamental property right to lease and license Unit 307" because it deprives him of the right to exclusive use and enjoyment of the Unit. Doc. 29 at 22. However, Mogan's right to use and enjoy his property is not deeply-rooted or sacrosanct. *See United States v. 16.92 Acres of Land*, 670 F.2d 1369, 1373 (7th Cir. 1982) ("It is axiomatic that property rights are not absolute."). Moreover, "[s]ubstantive due process is not a blanket protection against unjustifiable interferences with property[,] [a]nd it does not confer on federal courts a license to act as zoning boards of appeals." *Frey Corp. v. City of Peoria*, 735 F.3d 505, 508 (7th Cir. 2013) (first alteration in original) (citation omitted). Therefore, Mogan's ability to rent the Unit on home sharing websites is not a fundamental right. *See CBS Outdoor*, 959 F. Supp. 2d at 1067 n.4 (denying argument that right "to maintain and enjoy [one's] property" is a fundamental right); *Mann v. Calumet City*, No. 08 CV 555, 2009 WL 395465, at

*6 (N.D. Ill. Feb. 17, 2009) ("The right to sell one's property . . . is not a fundamental right for purposes of the Fourteenth Amendment due process analysis.").

Because Mogan has not sufficiently alleged that the Ordinance infringes on a fundamental right, he must allege that the Ordinance is arbitrary and unreasonable to sustain his claim, yet he fails to do this as well. As Mogan concedes, he "bears a very heavy burden" and "is required to overcome a presumption that the [City's] decision to prohibit short term rentals was reasonable." Doc. 29 at 23. "[G]overnmental action passes the rational basis test if a sound reason may be hypothesized." *Greater Chi. Combine*, 431 F.3d at 1071 (citation omitted). Based on the allegations in the FAC, the Court can hypothesize many sound reasons as to why the City chose to prohibit certain home sharing activities through the Ordinance—including maintaining the quality of life in residential neighborhoods and mitigating the effects of home sharing guests on full-time residents. *See Nordlinger*, 505 U.S. at 12 (noting "the State has a legitimate interest in local neighborhood preservation, continuity, and stability"); *Stone River Lodge, LLC v. Vill. of N. Utica*, No. 20 C 3590, 2020 WL 6717729, at *4 (N.D. Ill. Nov. 15, 2020) (finding ordinance regulating short-term rentals was rationally related to the village's interests in protecting "life-safety concerns, quality of neighborhood and related life concerns, security concerns, fire safety concerns, and tax revenue concerns" and dismissing substantive due process claim); *Calvey v. Town Bd. of N. Elba*, No. 20-cv-711, 2021 WL 1146283, at *12 (N.D.N.Y. Mar. 25, 2021) (finding complaint revealed that short-term rental ordinance "is rationally related to the Defendants' interest in planning how to use land in a way that balances the interests of homeowners, renters, and short-term visitors" and dismissing substantive due process claim); *Nekrilov v. City of Jersey City*, 528 F. Supp. 3d 252, 282 (D.N.J. 2021) (finding ordinance that regulated home sharing and short-term rentals passed rational basis review

because "the City had legitimate interests in increasing the long-term housing supply and reducing public nuisances").

Mogan also argues that because "other provision[s] of the Constitution are at issue, and there must be an inquiry as to the adequacy of state remedies," the Court should not dismiss the FAC at this stage. Doc. 29 at 23; *see, e.g.*, *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010) (stating that substantive due process claims "involving only the deprivation of a property interest are cognizable where the plaintiff shows 'either the inadequacy of state law remedies or an independent constitutional violation'" (citation omitted)). However, regardless of whether other constitutional provisions are at issue or of the adequacy of the state law remedies, because the Ordinance does not interfere with a fundamental right, it must only "be rationally related to a legitimate government interest, or alternatively phrased . . . be neither arbitrary nor irrational" to defeat a substantive due process challenge. *See Lee v. City of Chi.*, 330 F.3d 456, 467 (7th Cir. 2003).[10] As explained, the FAC reveals that the Ordinance is rationally related to "public health, safety, morals, or general welfare." *Greater Chi. Combine*, 431 F.3d at 1071 (citation omitted). Therefore, the Court dismisses Mogan's substantive due

---

[10] Moreover, the Court has dismissed Mogan's other alleged constitutional violations and the FAC contains no allegations regarding the inadequacy of the state law remedies available for his alleged substantive due process injuries. *See* Doc. 8 ¶¶ 229, 241 (stating in conclusory fashion that Mogan "has an inadequate remedy at law" for his Eighth Amendment and license for revenue claims). Therefore, the FAC also fails to sufficiently allege either an independent constitutional violation or that the state remedies are inadequate. *See LaBella Winnetka*, 628 F.3d at 943 (affirming dismissal of substantive due process claim alleging a deprivation of property interest where no other constitutional claims remained, and the complaint contained only conclusory allegations regarding the adequacy of available state law remedies); *McCarthy v. Vill. of Barrington*, No. 17 C 5594, 2018 WL 2305707, at *8 (N.D. Ill. May 21, 2018) (dismissing *sua sponte* substantive due process claim alleging that zoning ordinances "'substantially harmed' the 'use and enjoyment of [plaintiff's] property'" on Rule 12(b)(6) motion because the complaint "fail[ed] to allege any other independent constitutional violation on which to base her substantive due process claim or any inadequacy of state remedies").

process claim with prejudice.[11]  *See, e.g.*, *Mann*, 2009 WL 395465, at *7 (dismissing substantive

due process claim regarding impact of ordinance on plaintiff's ability to sell his property on

12(b)(6) motion because plaintiff failed to allege the ordinance implicated a fundamental right

and the ordinance "passe[d] the low threshold of rational basis review"); *Jeron v. City of Chi.*,

No. 15 C 8074, 2016 WL 1450073, at *5 (N.D. Ill. Apr. 13, 2016) (dismissing substantive due

process claim alleging ordinance deprived plaintiff of protected property interest where

complaint failed to allege the ordinance "was or is 'arbitrary,' 'irrational,' or not 'rationally

related to a legitimate governmental interest'" (citation omitted)).

## VII.    Declaratory Judgment (Count I)

Finally, Count I of the FAC seeks a declaration that the City has a duty to allow Mogan

to rent the Unit on home sharing websites.  The City argues that because all of Mogan's

constitutional claims against the City fail, no remaining controversy between the parties exists

and therefore, the Court must dismiss Count I against the City.  Mogan responds by asserting that

because the City added Roscoe to the prohibited buildings list, a controversy exists between

them.  However, the Court has dismissed all of Mogan's constitutional claims against the City,

including those alleging that the Ordinance arbitrarily and irrationally prohibits Mogan from

home sharing activities because of Roscoe's presence on the prohibited buildings list.

Accordingly, no controversy remains between Mogan and the City.  Thus, the Court lacks

jurisdiction over Count I against the City and dismisses it without prejudice.  *See White*, 15 F.4th

at 807 ("Article III limits the jurisdiction of federal courts to 'Cases' or 'Controversies.'"

(citation omitted)); *Deveraux v. City of Chi.*, 14 F.3d 328, 330 (7th Cir. 1994) ("[T]he

---

[11] As with Mogan's equal protection claim, any amendment would be futile because, given that the
Ordinance does not infringe on a fundamental right and does pass the rational basis test, no conceivable
basis exists for such a substantive due process claim.

Declaratory Judgment Act 'expands the scope of available remedies' and permits persons 'to seek a declaration of the constitutionality of the disputed government action.'  It is also true, however, that courts may not exercise this discretionary power in the absence of an 'actual controversy' between the parties." (citations omitted)).

As for Mogan's request for a declaratory judgment against the Roscoe HOA, the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), does not provide the Court with an independent basis of jurisdiction.  *Manley v. Law*, 889 F.3d 885, 893 (7th Cir. 2018).  And Mogan has not alleged any such independent federal basis for his request for a declaratory judgment against the Roscoe HOA, nor has he pleaded that diversity jurisdiction exists.  Therefore, no basis for original jurisdiction over the claim exists.  And because the Court has dismissed all of Mogan's claims against the City, the Court finds it appropriate to decline to exercise supplemental jurisdiction over the declaratory judgment claim against the Roscoe HOA.  *See* 28 U.S.C. § 1367(c) (district court may decline to exercise supplemental jurisdiction over state law claims when it has dismissed all claims over which it had original jurisdiction); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").  Therefore, the Court also dismisses Count I against the Roscoe HOA without prejudice for refiling in state court.

## CONCLUSION

For the foregoing reasons, the Court grants the City's [20] and the Roscoe HOA's [24] motions to dismiss.  The Court dismisses without prejudice Mogan's claim for a declaratory judgment against the City and the Roscoe HOA (Count I), takings claim (Count II), inverse condemnation claim (Count III), Eighth Amendment excessive fines claim (Count VIII), and

unconstitutional license for revenue claim (Count IX). The Court dismisses with prejudice Mogan's substantive due process claim (Count IV), First Amendment claims (Counts V, VI, VII, and XI), and equal protection claim (Count X).

Dated: January 18, 2022

SARA L. ELLIS
United States District Judge